BOARD·OF SUPERVISORS OF CLAY COUNTY v. BOARD OF SUPER-
VISORS OF CHICKASAW COUNTY.

1. STATUTE. *Revision of Acts of 1871 and 1872 creating Colfax County.*
In 1871 the legislature passed an act for the creation of a new county from
parts of other counties, and provided that the new county should be entitled
to its *pro rata* share of the county and school funds on hand. The county,
however, was not organized under this act. In 1872 the legislature passed
another act for the same purpose, embracing substantially the same provi-
sions, but omitting the provision above referred to. Within one month
after the passage of the latter act the county was organized thereunder. *Held,*
that the second statute being a revision of, or a substitution for, the first, the
provision of the first omitted in the second thereby became annulled.

2. SAME. *Creation of new county. Claim of new county to funds of old county.*
And without any statutory provision on the subject, the new county was not
entitled to any of the funds of the old counties from which it was formed.

3. RES JUDICATA. *Decision of board of supervisors on claim against county.*
A board of supervisors cannot refuse to allow a claim against their own county
and afterward plead successfully this judgment as a final adjudication of the
same and in bar of a suit on such claim.

4. SAME. *Appeal from decision of board of supervisors. Dismissal of suit. Effect.*
And when an appeal is taken from such a decision of the board of supervisors
to the circuit court and a judgment is taken dismissing the suit, or a non-
suit entered, at the instance of the party appealing, such judgment of the
circuit court cannot be set up by the county in bar of a suit against it on the
claim.

5. CHANCERY·PRACTICE. *Setting down cause for hearing within five months after
answer filed. Effect.*
While the setting down of a cause by a complainant for hearing within five
months after the answer has been filed admits the facts stated in such answer,
any conclusions of law stated in the answer are not thereby admitted. And
if the facts stated in the answer do not constitute a valid defense to the claim
asserted by complainant, a final decree ought to be entered in favor of
complainant.

6. INTEREST. *On claim against county.*
Where a claim against a county arises from a statute and not *ex contractu,* and
such statute makes no provision for interest, it is error for a court to adjudge
interest thereon. The general statute in this State on the subject of interest
does not embrace such claims against counties. *Warren County* v. *Klein,* 51
Miss. 807, cited.

APPEAL from the Chancery Court of Clay County.

HON. S, EVANS, Chancellor of the Seventh Judicial District, presided in this case, having interchanged with Hon. F. A. Critz.

In 1871 the legislature passed an act authorizing a new county to be created to be called Colfax, a certain part of the territory of Chickasaw to be included therein. This act contained a provision as follows :

" Section 7. *Be it further enacted,* That said county of Colfax shall pay its portion of the debts of the counties respectively from which said county of Colfax is formed, said proportions to be determined by the assessed value of the real and personal property within its limits, *and that it shall also receive its proportion of the county and school funds."*

No steps were taken to organize the county under this act.

In 1872 another act for the creation of the same county was passed, which contained a provision in the same words as the one above set out, except that the words in italics were omitted. Colfax County, now Clay County, was organized in about one month after the passage of this last act,. and a part of the territory of Chickasaw County was included in the new county.

In August, 1880, the Board of Supervisors of Chickasaw presented, by petition, a claim to the Board of Supervisors of Clay County for fourteen thousand three hundred and forty-two dollars and three cents, which was alleged to be the *pro rata* part of Clay County under the above act of a debt paid by Chickasaw County to the bondholders of the Grenada, Houston and Eastern Railroad Company. The board of supervisors rejected the claim, and the petitioner asked and was granted an appeal to the circuit court on April 5, 1881. At a regular term of the circuit court the petitioner appeared and asked the court to dismiss its appeal and that a nonsuit be granted, and that it be allowed to withdraw the record and evidences of debt on file. This the court ordered, except as to the withdrawal of the bill of exceptions.

Thereafter the Board of Supervisors of Chickasaw County filed. a bill against the Board of Supervisors of Clay County to ascertain the amount of debt due from the latter, and to compel them

to levy a tax to pay the same. The allegations of this bill are fully set out in the case of *The Board of Supervisors of Chickasaw County* v. *The Board of Supervisors of Clay County*, 62 Miss. 325.

The defendant filed an answer in which it set up numerous defenses. The complainant excepted to them all, and the court sustained all the exceptions but one, which was overruled. The exception overruled related to the defense set up in the answer, that this claim of complainant had become *res adjudicata* because of the action of the Board of Supervisors of Clay County thereon and the appeal taken to the circuit court by complainant. Afterward the defendant filed an amended answer, which was made a cross-bill. In this the defendant asked that it be allowed as an offset its *pro rata* part of the county and school funds of Chickasaw County on hand at the time of the formation of Colfax, now Clay County. The complainant demurred to this amended answer and cross-bill, the demurrer was sustained, and the cross-bill dismissed. The cause was set down for hearing by complainant before the expiration of the five months allowed by statute for taking testimony after answer filed.

The Chancellor rendered a final decree in favor of complainant for eighteen thousand four hundred and forty-nine dollars and forty cents, this being the *pro rata* share of Clay County of the several amounts paid by Chickasaw County as alleged in the bill, together with interest from the date of the several payments up to the rendering of the decree. The defendant appealed to this court.

*Barry & Beckett*, for the appellant.

1. The act creating Colfax County says that "it shall receive its proportion of the county and school funds." Act 1871, § 7, p. 802.

And in the same section it says Colfax County shall also pay its proportion of its debts. Counties are not like individuals possessing surplus funds, but their powers are granted by the legislature and confined to certain objects, and they are authorized to levy taxes and collect funds for these particular objects and these alone. Now, is it reasonable to suppose that the legislature by this seventh section intended for Colfax County to levy and collect taxes to pay

its proportion of the debts of Chickasaw County to Chickasaw County, and that Chickasaw County should pay over to Colfax County its proportion of the county and school funds, or is it not more reasonable to suppose that the intention of the legislature was there should be an accounting between the two counties, and that only the balance should be paid over?

2. It is very plain that a plaintiff cannot appeal from a *judgment against him* and take a *nonsuit* in the appellate court. If this were tolerated no final judgment could ever be held against a plaintiff, for every time he lost he would appeal, take a *nonsuit*, and commence again. If he takes a judgment in form dismissing the suit, it is in law but a dismissal of his appeal and leaves the judgment of the court below in full force. *Miss. Cent. R. R. Co. v. Beatty*, 35 Miss. (6 G.) 668; Freeman on Judgments, § 330 and note 5; 15 B. Monroe 145.

In this case, according to complainant's own showing, he appeared in open court and "*takes a nonsuit.*" It is not even a judgment of dismissal or *nonsuit by the court*, but the complainant according to his record "*takes*" a nonsuit.

This is not a technical *nonsuit*, but a *retraxit*. 7 Bacon's Abrdg., title Nonsuit, p. 215; *Work v. Byers*, 3 Hawks. 228. And is a bar to all actions of a *like nature*. Ib. A *retraxit* is a bar to another suit, and an entry that the "plaintiff appeared by attorney and the plaintiff *takes a nonsuit*," is a *retraxit*. *Evans v. McMahon*, 1 Ala. 45; *Thompson v. Odem*, 31 Ala. 111, 112, 113.

But the circuit court had no power to grant a *nonsuit*. Its jurisdiction on appeal from the board of supervisors is limited by the statute. He could enter but one of two judgments—to affirm or reverse the judgment below. If no bill of exceptions is taken it does not gain jurisdiction and must dismiss the appeal, but if a bill of exceptions is taken it does gain jurisdiction and then "*can only affirm or reverse the judgment below.*" Code 1880, § 2351; *Bridges v. Supervisors*, 57 Miss. 255; *McNamara v. Speer*, 25 Miss. 539, 541; *Morse v. Speer*, Ib. 543.

And if it is mandatory on a court to affirm or reverse a judgment, then any judgment which it renders, which is *not a reversal*,

is an affirmance and *res adjudicata*. *Hess* v. *Beckman*, 11 Johns. 457, 458 ; Freeman on Judgments, § 330 and note 5 ; *Campbell* v. *Mayhugh*, 15 B. Monroe 145.

But even if we admit that the judgment of the circuit court was a *dismissal*, then the complainant is only allowed one year within which to bring a new suit. Code 1880, § 2686 ; *Sang* v. *Fatheree*, 7 S. & M. 404 ; *Weathersby* v. *Weathersby*, 31.Miss. 662.

The judgment of the board of supervisors is like the judgment of any other court, final and conclusive and *res adjudicata* "*until reversed or vacated in some mode known to the law*," and having let the one year elapse it is now too late to try to open it. *Carroll* v. *Tishomingo Co.*, 28 Miss. 48, 49 ; *Yalobusha Co.* v. *Casbry*, 3 S. & M. 529, 547 ; *Ross* v. *Lane*, 3 S. & M. 695, 713 ; *Arthur* v. *Adam*, 49 Miss. 404, 409 ; *Supervisors* v. *Arrighi*, 51 Miss. 668, 672 ; *Kline* v. *Supervisors*, 54 Miss. 254, 258 ; *Beamar* v. *Leake Co.*, 42 Miss. 237, 245.

3. It is clear that the liability of Clay County to Chickasaw County is a pure statutory obligation, and it is decided by our supreme court that interest is not recoverable against a county in such cases. *Klein* v. *Warren County*, 51 Miss. 816, 817.

4. It will be seen that the cause was set down by the complainant and tried by the court in just ten (10) days after filing the answer, and under the Code of 1880 the answer is to be taken as true. Code 1880, § 1893. It was error to give judgment for the defendant upon the facts stated in the answer.

*W. S. Bates* and *J. B. Gladney*, for the appellee.

1. Clay County was never entitled by law to make these cross-demands against Chickasaw. The appellant county purports to have been created by two separate and distinct acts of the legislature—one of the 12th May, 1871, Laws of 1871, p. 802, and the other of the 4th of April, 1872, Laws of 1872, p. 107. The main features of the two laws will be found different, and the most important features repugnant ; to illustrate, the seventh section of the act of 1871 provides that, while Colfax County shall be liable to Chickasaw County for its proportion of Chickasaw's debts, yet Chickasaw was made liable to Colfax for a share of the county and

school funds, while the act of 1872, creating Colfax County, made no such provision. A month after the passage of the act of 1872 the county was organized, as shown in the original bill of complainant. Dwarris on Statutes and notes, 154–164.

2. In the last amended answer appellant has made an effort to improperly interpolate his former answer to which exceptions had been sustained, but which, we think, might have been struck out on motion for impertinence if it had not escaped notice both by court and counsel. There being no issues on which it was necessary for appellant to take proof it is immaterial to his defense whether his answers are to be taken as confessed or not. Code 1880, § 1892.

3. On the subject of interest equity follows the law in granting it, and not only so, but often exercises an equitable jurisdiction, the granting of damages. Code 1880, § 1143.

The law fully sustains the ruling of the court in the allowance of interest from the dates of the several payments made by Chickasaw for Clay. The several acts of the legislature out of which this liability grew, and more especially that of the 25th March, 1871, seem to us to set this question at rest.

4. It is contended by counsel for appellant that the complainant in this case is estopped by a judgment rendered by the Circuit Court of Clay County, as an appellate court, on an appeal in this case from a judgment by the Supervisors' Court of Clay County.

We contend that the Circuit Court of Clay County did not render any judgment in this case which decided the merits of the controversy. The record shows that no final judgment was there rendered, but that complainant had leave to withdraw his case from that court together with all proofs and the entire record except the bill of exceptions. The plaintiff had the right then, there to take a nonsuit without prejudice, and that court then so decided. Code 1880, § 1722. If this was error in that court, the defendant in that case could have had his appeal, and is now at this late period in the litigation estopped from complaining. But, admitting that no nonsuit was in fact allowed, and that the effect of that judgment was simply to affirm the judgment of the lower

court, that is, of the Board of Supervisors of Clay County, what was then there decided by that court? That court had no jurisdiction then there to render any judgment in regard to the validity of the claims made in complainant's bill in this case. That court is one of special limited jurisdiction. Art. 4, § 20, Const. 1832; Art. 6, § 20, Const. 1869; § 2144, Code 1880; § 1363, Code 1871; § 2159, Code 1880; § 1381, Code 1871; Laws 1877, p. 16, § 5; § 2162, Code 1880; § 1380, Code 1871; *Monet* v. *Jones*, 10 S. & M.

*McIntosh & Williams*, on the same side.

1. Did the order of dismissal and nonsuit of the Circuit Court of Clay County have the effect to bar appellee from prosecuting this claim in the chancery court?

If any doubt had ever existed as to the effect of this judgment, we think the same is put at rest by § 1722, of the Code of 1880, which provides "That if the plaintiff suffers a nonsuit or dismisses his suit without having received satisfaction, he shall stand in the same situation as though he had never instituted such suit."

The judgment of the Board of Supervisors of Clay County could never have become final against Chickasaw County; there were two modes of procedure left open to Chickasaw County after the claim was disallowed by Clay County, viz.: an appeal to the circuit court from the order, or an original suit on the claim. Section 2175, Code 1880.

The legal effect of the judgment of the circuit court was to place the county of Chickasaw in the same position as it would have been if no appeal had been taken from the order of the board of supervisors.

If authorities on the legal effect of the judgment of nonsuit or dismissal are desired, we ask the attention of the court to § 261, Freeman on Judgments.

2. The demurrer to the cross-bill raises the question whether or not Chickasaw County was ever liable to Clay County on account of any funds in the hands of the former at the creation of the latter. It will be noted that the act of 1872 nowhere provides for the payment of any sum or funds to Clay County by any of the counties out of which it was formed. The latter act was evidently

intended as a substitute for the former, and the omission of the above clause from the act of 1872 is evidence of an intent of the legislature to repeal it, and it must be regarded as repealed. *Lefevre* v. *Lefevre et al.*, 59 New York 445 and 446 : " A statute is impliedly repealed by a subsequent one revising the whole subject-matter of the first." *Commonwealth* v. *Cooley*, 10 Pick. star p. 40 ; *Nichols* v. *Squire*, 5 Pick. 168 ; 7 Am. Dec. 105.

If Clay County did not organize under the act of 1871, and the act of 1871 was repealed by the act of 1872, then there was at no time any liability in favor of Clay County against Chickasaw County for any part of the different funds set up and asked for in appellant's cross-bill.

3. Did the court err in allowing interest on the several amounts? The appellant relies solely on the case of *Warren County* v. *Klein* to sustain this view. We don't understand the court to decide in that cause that a county is to be exempt in all cases from the payment of interest simply because it is a county, but the character of the debt owing by the county has quite as much to do with it as the fact that the defendant happens to be a county. And we think that a different rule might prevail where a claim has been presented to the board of supervisors and they refuse to allow it and issue their warrant. This court has decided on three different occasions, as far back as 1852 and as late as 1876, that the State is liable for interest. In the case of *Swan* v. *Turner*, 1 Cushman 565, Mr. Justice Fisher, upon the authority of Judge Story, held that the State was liable for interest after demand upon the proper officer or tribunal and refusal by the officer or tribunal to pay, and in the case of *State* v. *Mayes*, 28 Miss. 706, the same doctrine is announced by Mr. Justice Handy, and in the case of *Whitney* v. *State*, 52 Miss. 736, it is held that the State is liable for interest after demand upon and refusal by the proper authority to pay the claim.

Money paid for the use of another bears interest. 1 Sutherland on Damages 588 ; 53 Am. Dec. 684.

Clay County was liable with Chickasaw for its part of the indebtedness of Chickasaw.

4. Appellant says that the court ought to have rendered a decree in its favor at the June term, 1886, of the Chancery Court of Clay County, because the case was set down before the expiration of the time allowed the defendant for taking testimony. The defenses set out in the answer, if true, could not avail the defendant, since they had already been passed on by this court, except as to the question of *res adjudicata.*

ARNOLD, J., delivered the opinion of the court.

The general merits of the controversy in this case have been decided adversely to appellants, on former appeals to this court. *Board of Supervisors of Chickasaw County* v. *Board of Supervisors of Clay County,* MSS.; *Board of Supervisors of Chickasaw County* v. *Board of Supervisors of Clay County,* 62 Miss. 325.

It was not error to sustain the demurrer to appellant's amended cross-bill and to dismiss the same. The demand made by appellant in the amended cross-bill for a part of the county and school fund belonging to Chickasaw County at the time Colfax, now Clay County, was created, was without authority of law. The act entitled "An Act to create a new county in the State, to be called Colfax County," passed over the governor's veto May 12, 1871, provided that Colfax County should pay its portion of the debt of the counties respectively from which it was formed, and that it should also receive its proportion of the county and school fund from such counties. If it be conceded that this act ever had the force of law, it was never put into operation. The new county was not organized under it, and it was superseded and repealed by the act entitled "An Act to create a new county in the State, to be called Colfax County, and for other purposes," approved April 4, 1872, under which the new county was organized and came into being. The latter act contained the provision that the new county should pay its portion of the debts of the counties respectively from which it was formed, but it omitted the provision that the new county should also receive its proportion of the county and school funds from such counties. Here, then, are two statutes on the same subject and for the same purpose, and the last, under which the new

county was in fact created, omitting the provision contained in the first, that the new county should receive its proportion of the county and school funds from the old counties. The general rule is that when any statute is revised, or when one statute is framed from another, some parts being omitted, the parts omitted are to be considered as annulled. Where a statute is evidently intended to revise the whole subject treated in a former statute, and to be a substitute therefor, it repeals such former statute, and though there may be a plain *casus omissus*, the courts cannot supply it. Sedgwick on Con. of Stat. and Const. Law 365, 366, and note ; *M. & O. R. R. Co.* v. *Weiner*, 49 Miss. 725.

Without provision being made to the contrary, the new county was not entitled to any part of the county or school funds or other public property which did not fall within its boundaries. They belonged to and continued to be the property of the old counties after the separation. The creation of new counties is a matter within the power and discretion of the legislature, subject only to the restrictions imposed by the constitution. Within these limitations the legislature may make whatever regulations it will as to the division of property and the payment of existing debts, and the terms prescribed by it must prevail. Courts cannot supplement legislation by assuming to adjust equities which have been ignored by the legislature. *Laramie County* v. *Albany County*, 92 U. S. 307 ; *Board of Supervisors of Chickasaw County* v. *Board of Supervisors of Sumner County*, 58 Miss. 619 ; Dill. on Mun. Corp., § 126 *et seq.*

The defense of *res adjudicata* did not and could not arise out of the facts shown by the record, and the record could not be contradicted or changed by parol so as to render such defense available. The presentation of the claim to the Board of Supervisors of Clay County for allowances was merely a preliminary step to enable appellees to bring suit on the same in case there was refusal to allow it. Suit could not have been maintained on the claim without this action being first taken. After the Board of Supervisors of Clay County refused to allow the claim, it was the right of appellee either to sue or appeal on bill of exceptions to the circuit court from the de-

cision made against them.    They appealed to the circuit court, but there voluntarily dismissed their appeal and took a nonsuit. The effect of this was to restore the conditions that existed before the appeal, and to enable appellees to commence suit on their claim just as if no appeal had been taken.    It is impossible to conceive that a board of supervisors can in any state of case refuse to allow a claim against their county, and afterward set up their judgment or decision thereon as a final adjudication and bar to a suit on the claim, or that they can derive any such defense from a judgment of the circuit court dismissing or entering a nonsuit at the instance of the party appealing, on an appeal from their decision.

By setting the cause down for hearing before the expiration of five months allowed by law for taking testimony, after answers filed, appellees admitted the facts stated in the answer to be true, but they did not thereby admit the conclusions of law stated in the answer to be true.    Admitting the facts contained in the answer to be true, the decree is still right, except as hereinafter stated.    After the exceptions to the answer had been properly allowed, and the matters to which exceptions had been taken were stricken therefrom, and after what has been said of the defense of *res adjudicata,* the answer constituted no defense, and the facts remained that Chickasaw County has paid a large debt which it owed at the time Clay County was created, and that Clay County has not paid her proportion or any part thereof.

By the decree Clay County is required to pay interest on the amount found to be due by it from the date of the payments made by Chickasaw County.    This was error.    The claim of Chickasaw County does not arise *ex contractu,* but it is purely statutory.    The statute of May 4, 1872, by which the liability was created, makes no provision in regard to interest.    Interest, as it was said, in the *Board of Supervisors* v. *Klein,* 51 Miss. 807, is the creation of statute, and our general statute on the subject does not embrace counties.    The re-enactment of the interest statute since the decision was rendered in the *Board of Supervisors* v. *Klein, supra,* may be regarded as a recognition and adoption by the legislature of

the views expressed in that case as to the non-liability of counties to the burdens of interest.

*The decree is reversed, and decree is rendered here in favor of appellee for the amount of the principal, without interest, found in the court below to be due from appellants.*