Prescott *v.* Town of Lennox.

PRESCOTT *v.* TOWN OF LENNOX.

(*Jackson.*   March  3,  1898.)

1. MUNICIPAL CORPORATIONS.  *Public property upon division of.*

Upon division of a municipality, and the erection of the several parts into a new corporation, each portion, in the absence of contrary legislative regulation, will hold in severalty, for public purposes, the public property—*e. g.*, schoolhouses—which fall within its limits.   (*Post, pp. 592, 593.*)

Cases cited and approved: 92 U. S., 315; 100 U. S., 525; 58 Miss., 619; 2 Wend., 109; 1 Allen (Mass.), 49; 33 Atl. Rep., 926; 10 N. E. Rep., 578.

Cited and disapproved: 3 L. R. A., 46.

2. PUBLIC SCHOOLS.  *Ownership of schoolhouses upon division of school district.*

Upon division of a school district the public schoolhouses therein become the property, in severalty, for public purposes, of the portion in which they are situated.   (*Post, pp. 592–595.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. STERLING PIERSON, J.

R. H. PRESCOTT for Prescott.

J. C. ADAMS and ADAMS & TRIMBLE for Town of Lennox.

BEARD, J. This is a controversy over the title to a lot and the right of possession of a building erected thereon, located in the incorporated town of Lennox. The territory within this municipality originally formed a part of the eighteenth school district of Shelby County, but was taken therefrom and legally organized into an independent corporation in the year 1896. Before the separation occurred, the lot was acquired and the building in question was erected by the predecessors in office of the complainants, who are the present school directors of the eighteenth school district, for public school purposes, and the bill in this cause was filed to have established the right of the complainants, as such directors, to this property, and to have the Board of Education of defendant corporation, as well as the municipality, perpetually enjoined from interfering with their control over it.

We think the great weight of authority is to the effect that upon the division of a municipality, in the absence of legislative regulations, each portion will hold in severalty, for public purposes, the public property which falls within its limits. As supporting this proposition, we refer to *Laramie* v. *Albany*, 92 U. S., 315; *Mt. Pleasant* v. *Beckwith*, 100 U. S., 525; *County of Chickasaw* v. *County of Sumner*, 58 Miss., 619; *Hempstead* v. *N. Hempstead*, 2 Wend., 109; *School District* v. *Tapley*, 1 Allen (Mass.), 49; *Inhabitants of Bloomfield* v. *Mayers, etc.* (New Jersey, 1896), 33 Atl. Rep., 926; *Allen* v.

*Macey* (Ind.), 10 N. E. Rep., 578. This view was taken by this Court in the unreported case of *City of Nashville* v. *Lawrence*, decided at the December Term, 1892 (Nashville), where it was held that valuable property acquired and used for school purposes by the school directors of a school district, situated within the limits of territory afterward and nexed by legislative Act to and becoming part of the municipality of Nashville, there being nothing to the contrary in the Act of annexation, passed under the control of that city for public purposes.

The complainants rest their claim largely on the case of *Winona* v. *School District*, determined by the Minnesota Supreme Court in January, 1889, and reported in 3 L. R. A., 46. The question there is the same that is involved here, and that Court, in an opinion in which is carefully gathered and criticized many of the cases, reached an opposite conclusion. While conceding the ability of that opinion, and giving full force to its suggestion that some of the cases relied upon as support for the contrary view contain simply dicta, we believe that sound reason and a wise public policy require an adherence to the rule as applied in the *City of Nashville* v. *Lawrence, supra.*

" Municipal corporations are called into being in the interest of the public, and, in order that they may better subserve their purpose, they have the right to create and control all the agencies and appliances essential to the health, safety, and convenience of the

16 P—38

communities constituting them. These agencies and
"appliances, whether engine house, . . . school-
house, . . . hydrants, or sewers, are so dis-
tributed as to be of the most efficient service to the
public. They are brought into existence to be so
used. Now, when the territorial limits of a corpo-
ration are diminished by excision of a part of its
territory, the power of control of the public agent
over their appliances," we think, must be "restricted
to the newly defined limits of the corporation, . .
unless the Legislature does what is unusual, confers
a power upon its agents to act extraterritorially."
*Inhabitants of Bloomfield* v. *Mayers, etc., supra.*

In the present case it is evident that the property
in question cannot now be used for school purposes,
unless by the Board of Education, representing such
uses within the limits of the new corporation, and
if complainants were permitted to control it at all,
it would be only on the idea of an ownership which
could alone be divested by grant or by express
Legislative enactment. Such theory, however, would
ignore the fact that the title to such property is
only held in trust for the public, and that by the
change of municipal conditions the *cestui que trust*
has become that public constituting the new corpo-
ration of Lennox.

We agree that with the facility with which cor-
porations, under the provisions of the Code, may be
called into being, injustice may sometimes be worked.
This is a matter, however, for legislative correction.

Prescott *v.* Town of Lennox.

But it is impossible to make one rule for corporations thus organized. and another for those created by special grant from the Legislature. So, in adopting the general rule already announced, and making it applicable. to all municipal corporations, however created, there will be, we think, the closest adherence to legal principles and the nearest approach to justice.

In the present case there is no statutory provision under which complainants can claim control over this property, and it. follows that the decree of the Chancellor establishing their right to it was erroneous, and his decree is reversed, and their bill is dismissed with costs.